UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MADELYN FLORES,

                          Plaintiff,

            -against-

NEW YORK CITY HUMAN RESOURCES
ADMINSTRATION,

                          Defendant.

---

10 Civ. 02407 (RJH)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

Plaintiff *pro se* Madelyn Flores brings this employment discrimination action against defendant the New York City Human Resources Administration ("HRA"), asserting race and national origin discrimination, hostile work environment, and retaliation claims in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*  HRA now moves to dismiss, arguing that many of Flores's claims are untimely as they were not charged, as required by the statute, to the Equal Employment Opportunity Commission ("EEOC") within 300 days of their accrual; and that in any event Flores's complaint fails to allege facts establishing elements required for prima facie cases of those causes of action.  To the extent Flores alleges discrete acts of disparate treatment occurring prior to October 10, 2007—300 days before she filed her EEOC complaint—those claims are untimely.  And as those claims are not rescued by either the continuing violation doctrine, or the doctrine of equitable tolling, they must be dismissed.  However, HRA mistakes Flores's pleading standard, and Flores's timely disparate impact, hostile work environment, and retaliation claims thus survive.

Employment discrimination complaints need not contain facts establishing prima facie cases of employment discrimination; instead such complaints must simply comply with Federal Rule of Civil Procedure 8(a)(2) and put the defendant on fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Accordingly, HRA's motion is GRANTED IN PART and is DENIED IN PART.

## BACKGROUND

The following factual allegations are taken as true for the purposes of this motion.[1]

Flores, a self-described Hispanic Puerto Rican, began working for HRA in December 1980 and still worked there when this case was filed on March 17, 2010. (Compl. ¶ II.E.)  From November 2004 through October 2005, Flores was the "Acting Director" of the "Division."  (Id.)[2]  In November 2005, HRA hired Mary-Ann Maloney, an African American woman, as "the Division's Director[,] and she became [Flores's] direct supervisor."  (Id.)  Between then and April 2006, Flores and Maloney met frequently "to debrief" Flores and "help [Maloney] to transition."  (Id. & Compl. Addendum at 1.)  In those meetings, Flores and Maloney discussed "confidential

---

[1] Because of Flores's *pro se* status, in ruling on HRA's motion to dismiss, the Court may consider factual allegations Flores makes in her opposition papers, in addition to the allegations in the complaint, and when appropriate here does so.  *See Rosario v. New York City Dep't of Homeless Servs.*, No. 06 Civ. 7197, 2008 WL 449675, at *3 n.1 (S.D.N.Y. Feb. 19, 2008) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." (internal quotation marks omitted)).

[2] Flores refers only to "the Division" in her complaint and her brief in opposition.  (*See* Compl. ¶ II.E; Pl.'s Opp'n at 2.)  According to HRA's memorandum of law in support of its motion, Flores was and is currently an employee of the Fair Hearing Division of the Medical Insurance & Community Services Administration of HRA.  (Def.'s Mem. at 1.)

information" about certain HRA employees "including [regarding] work performance, disciplinary actions and medical history." (Compl. Addendum at 1.)

Sometime in December 2005, Maloney "divulged the confidential information [Flores] had provided to her to certain staff members." (*Id.*) Then on December 27, 2005, Flores met with Maloney's—and Flores's former—supervisor Sam Morcos "to discuss [Flores's] evaluation." (*Id.*) In that meeting, Flores "made [Morcos] aware" that Maloney had divulged the information to staff members and that the "confidential information was no longer being kept in a secure place." (*Id.*) In March 2006, Morcos informed Maloney of what Flores had told him about Maloney during the December 27 meeting. (*Id.*) And "[p]artly as a result, from March 2006 to the present, [Flores has] experienced race based discrimination, retaliation, harassment and a hostile work environment." (*Id.*) Flores alleges that "[s]ince March 2006 [she has] been subjected to disparate treatment," in that she has "been treated differently than the other workers in [her] title who are Black." (*Id.*) Specifically, (1) Maloney "ostracized [Flores] in many ways . . . because of [Flores's] race and national origin," starting in March 2006, (*id.* at 2); (2) Maloney "did not place the same [communication-related] restrictions on Non-Hispanic employees" that she apparently placed on Flores since May 2006, (*id.*); (3) Maloney told Flores that "no one in upper management was going to promote [her] because [she speaks] with a Spanish accent," in December 2006, (*id.*); and (4) Maloney "used harsh language in communicating with [Flores], and applied time and leave rules against . . . [Flores] and some other Hispanics, but not to non-Hispanics," since February 2006, (*id.* at 3).

Flores makes several additional allegations of mistreatment not explicitly connected to her race or national origin.  She alleges (1) that on "at least four occasions in 2006, [Maloney] denied [her] leave," and otherwise made obtaining leave "more difficult or even impossible," (*id*. at 1-2); (2) that since March 2006, Maloney gave her "less desirable" work assignments, (*id*. at 2); (3) that since March 2006 Maloney "refused to allow [her] to attend meetings . . . which provide exposure which can help lead to promotion," (*id*.); (4) that since December 2006, Maloney "prevented [her] from taking available, valuable training . . . [which] makes it easier for [Maloney] to accuse [Flores] of not doing [her] job 'as well as [she] could,'" (*id*.); (5) that in April 2006, Maloney denied Flores a promotion, (*id*.); (6) that in January and February 2007, and on unspecified dates in 2008, Maloney gave her four "unjust disciplinary memo[randa]," (*id*.); (7) that in January 2008, January 2009, and February 2010, Maloney gave her three "unjust and unwarranted negative evaluation[s]," (*id*. at 2, 3); (8) that in July 2008, Maloney "advised the Division of Procedures" that Flores could no longer do translation work, (*id*. at 2); (9) that in August 2008, Maloney falsely accused Flores of falsifying time records, (*id*. at 2); (10) that in April 2009, Flores was "unjustly reprimanded" based on the theretofore received disciplinary memoranda, (*id*. at 3); and (11) that since April 2006, Maloney has "verbally abus[ed]" and "berat[ed]" Flores, in front of coworkers and "in a shocking and degrading manner," and likewise has allowed coworkers to berate Flores, (*id*.).  Flores also alleges that she and "enough [other] Hispanic employees have complained of their treatment by [Maloney] for the HRA senior supervisors to realize that she is [engaging in discriminatory conduct]."  (*Id*.)

Flores neither has been terminated from, nor has voluntarily left, her job at HRA at least as of the date she filed this action, March 17, 2010.  She did, however, file a charge with the EEOC regarding the conduct alleged on August 5, 2008.  (Compl. ¶ III.A.)  She then received a Right to Sue letter from the EEOC on January 26, 2010.  (*Id.* ¶ III.B.)

## DISCUSSION

### I.  Statute of Limitations

HRA first argues that many of the events of which Flores complains—including all events occurring prior to October 10, 2007—are barred by the applicable statute of limitations.

### A.  300 Day Limitations Period

In New York, "[a]n employment discrimination claim must be filed with EEOC within 300 days of the alleged discrimination."  *Dimps v. New York State Office of Mental Health*, ___ F. Supp. 2d ___, 2011 WL 1364534, at *3 (S.D.N.Y. Apr. 1, 2011); *see also* 42 U.S.C. § 2000e-5(e)(1); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).  Filing a complaint within this period is "a precondition to filing a Title VII claim in federal court."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  Thus, "[d]iscriminatory incidents not timely charged before EEOC will be time-barred upon the plaintiff's suit in district court."  *Dimps*, 2011 WL 1364534, at *3 (quoting *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999)).

When the "plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004). "With respect to claims based on termination, failure to promote, denial of transfer, or refusal to hire, section 2000e-5(e)(1) precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." *McGullam*, 609 F.3d at 75 (internal citations and quotation marks omitted) (emphasis in original); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Finally, "[s]ince the statute of limitations is an affirmative defense, the Defendants bear the burden" of proving that claims fall outside it. *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011). Flores filed her charge with the EEOC on August 5, 2008. As such, only claims accruing from discrete acts of discrimination that occurred within the prior 300 days, on or after October 10, 2007, would be facially timely under the statute. Thus to the extent Flores's discrimination claims are based on conduct occurring before October 10, 2007, those claims are facially barred as untimely, unless excepted from the limitations period.

### B.  Exceptions to Timely Filing

Several exceptions and conditions to this limitations rule are applicable to this case. First is the "continuing violation doctrine" which allows review of claims based on acts outside the 300 day period that "were part of a continuing policy and practice of

prohibited discrimination." *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010). The continuing violation doctrine applies only "'to cases involving specific discriminatory policies or mechanisms.'" *Id.* (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)). And the law is clear that, "[i]n the wake of [the Supreme Court's decision in] *Morgan*, the continuing violation doctrine no longer applies to discrete discriminatory acts." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 301 (S.D.N.Y. 2009); *see also McGullam*, 609 F.3d at 75. To invoke the doctrine, at least "one act of discrimination in furtherance of the ongoing policy [must have] occurred within the limitations period . . . [and] multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Valtchev*, 400 F. App'x at 588-89. "The burden is on the plaintiff to produce evidence of a continuing violation." *Atlantic States Legal Foundation, Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 n.20 (N.D.N.Y. 2001) (quoting *Orange Env't, Inc. v. County of Orange*, 923 F. Supp. 529, 535 (S.D.N.Y. 1996)). Finally, the "doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Apionishev v. Columbia University*, No. 09 Civ. 6471, 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011); *see also Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000) (collecting cases).

Related is the Court's consideration of stale events relevant to a timely hostile work environment claim. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day." *Morgan,* 536 U.S. at 115 (internal citation omitted). Therefore, "consideration of the entire scope of a hostile work

environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.

Finally, the "time period for filing a charge is subject to equitable doctrines such as tolling." *Morgan*, 536 U.S. at 113; *see Springs v. Bd. of Educ.*, No. 10 Civ. 1243, 2010 WL 4068712, at *3 (S.D.N.Y. Oct. 14, 2010) ("[A] court may equitably toll [the Title VII] statute of limitations in certain very limited situations."). "There are three general instances in which equitable tolling is appropriate[:] (1) a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; (2) a plaintiff actively pursued judicial remedies by filing defective pleadings during the statutory period; or (3) extraordinary circumstances have prevented the employee from exercising his or her right." *Springs*, 2010 WL 4068712, at *3. A plaintiff seeking equitable tolling bears the burden of proving that tolling is appropriate. *See Moore v. City of New York*, No. 08 Civ. 8879, 2010 WL 742981, at *9 (S.D.N.Y. Mar. 2, 2010) ("The statute of limitations can, of course, be equitably tolled, but the burden rests with plaintiff to prove her entitlement to a toll, and the burden is steep." (quoting *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006))).

**C.  Exceptions: Application**

As stated above, in order for a hostile work environment claim to be timely, "the employee need only file a charge within 300 days of any act that is part of the hostile work environment." *Costello v. New York State Nurses Ass'n*, ___ F. Supp. 2d ___, 2011 WL 1560971, at *9 (S.D.N.Y. Apr. 25, 2011) (quoting *Morgan*, 536 U.S. at 118)

(alterations omitted).  Furthermore, if an employee files a timely hostile work environment claim, the employee may "us[e] the prior acts as background evidence in support of [that] timely claim."  *Id.* (quoting *Morgan*, 536 U.S. at 113).  Flores's hostile work environment claim includes specific allegations continuing through at least March 2008.  (Compl. Addendum at 3 (noting, in a paragraph titled "**Hostile Work Environment**," several instances of Maloney's "verbal abus[e]" including Maloney "setting up a meeting for the purpose of having my subordinates berate me" in March 2008).)  Because this event occurred within the statutory period, Flores's hostile work environment claim is timely; indeed, HRA concedes as much.  (*See* Def.'s Mem. at 5 ("Therefore, the only timely claims asserted in the Complaint are plaintiff's hostile work environment claim and . . . .").)

The next exception is the continuing violation doctrine, which "applies to cases involving specific discriminatory policies or mechanisms."  *Valtchev*, 400 F. App'x at 588.  The doctrine does not apply to "a series of related, discrete acts."  *Williams-Velasquez v. Guardian Life Ins. Co.*, No. 99 Civ. 738, 2003 WL 22038567, at *9 (S.D.N.Y. Aug. 29, 2003).  Flores, however, alleges no discriminatory policy or mechanism.  Accordingly, the continuing violation doctrine does not rescue her claims accruing prior to October 10, 2007.[3]

---

[3] A discriminatory policy for purposes of the continuing violation doctrine "need not be 'formal' or 'widespread,' but the employer must permit the conduct 'to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination.'"  *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 301 (S.D.N.Y. 2009) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001)); *see also Port Auth. Police Asian Jade Soc. of New York & New Jersey, Inc. v. Port Auth. of New York & New Jersey*, 681 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (discriminatory practice exists "when the practice is of such a routine, or of a generalized nature that it is the defendant's standard operating procedure.").

Flores alleges that she informed "Maloney's supervisors" about "the improper conduct engaged in against me," but that "the senior supervisors" failed to put an end to the conduct.  (Compl. Addendum at 3.)  She

The final exception is equitable tolling.  Flores alleges (1) that the "individual events that took place [before October 10, 2007], on their own, were not sufficient to indicate to me that discrimination was taking place," (Pl.'s Opp'n at 4); (2) that between April and July 2007, Morcos improperly investigated and wrongfully denied her internal complaint of discrimination and retaliation with HRA's Equal Employment Opportunity ["EEO"] division, (*id*. at 4-5); and (3) that between July 2007 and August 2008 she was intimidated and feared that bringing a complaint would lead to her termination, (*id*. at 5).

Flores's first two arguments are easily disposed of.  By her first argument, Flores essentially seeks to use the exception for consideration of stale events in judging the sufficiency of a hostile work environment claim to toll the statute of limitations concerning her claims based on discrete acts of disparate treatment.  But Title VII precludes these claims as untimely.  *See McGullam*, 609 F.3d at 75.  In addition, Flores here makes no argument that HRA in any way prevented her from pursuing the claims, other than to discriminate against her in ways that failed to indicate discriminatory animus.  Flores's second argument fails because for Title VII actions, "the pendency of a grievance, or some other method of collateral review of an employment decision, does

---

also alleges that "enough Hispanic employees have complained of their treatment by Ms. Maloney for the HRA senior supervisors to realize that she is . . . discriminating against me and others because we are Hispanic."  (*Id*.)  This allegation, however, is insufficient to bring Flores's claims within the continuing violations doctrine—a burden Flores bears.  *See Atlantic States*, 182 F. Supp. 2d at 248 n.20; *Vassallo v. New York*, Nos. 95-CV-4224, 96-CV-2814, 2000 WL 33357451, at *3 (E.D.N.Y. Sept. 26, 2000).  First, the argument has multiple holes.  For example, while the complaint alleges that Maloney's supervisor eventually discredited Flores's internal complaint in May 2007, it does not say either (A) that that determination was itself the product of any discriminatory animus; (B) that other Hispanic employees' complaints were equally discredited, only that other Hispanic employees had filed complaints; or (C) how many or what percentage of Hispanic employees were filing complaints.  In addition, the Court can find no case holding that the mere allegation that other employees had complained of discriminatory conduct is sufficient to bringing claims within the statutory period on a continuing violation theory.  And this is not surprising considering that the "doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Apionishev*, 2011 WL 1197637, at *3.  Even reading Flores's papers to raise the strongest arguments they suggest, then, the Court cannot infer a discriminatory policy or practice from her allegations so as to rescue her untimely claims.

not toll the running of the limitations periods." *Cherry v. City of New York*, 381 F. App'x

57, 59 (2d Cir. 2010) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 261

(1980)); *see also Vernon v. Port Auth. of New York & New Jersey*, 154 F. Supp. 2d 844,

852 (S.D.N.Y. 2001) (equitable tolling inapplicable, *inter alia*, during pendency of

internal investigation of plaintiff's discrimination claims when no allegation that

employer led plaintiff to believe that time was tolled during that period).

Flores's third argument is also insufficient to toll the statute of limitations.  First,

the argument is belied by Flores's assertion that though "it is normally difficult to fire a

permanent employee like myself[, t]he one exception is if one is accused of stealing time

which is basically what Maloney" accused Flores of in August 2008 by charging Flores

with falsifying time records.  (Pl.'s Opp'n at 6; *see* Compl. Addendum at 2.)  If a

"permanent" City employee can be terminated only through an accusation of theft and, in

any event, Flores makes no assertion that her filing of the her internal complaint caused

her to fear for her job, then it is hard to accept as plausible that a fear of termination could

cause Flores to refrain from filing an EEOC complaint.[4]  More importantly, equitable

tolling is "applied only in rare and exceptional circumstances." *Jenkins v. Greene*, 630

F.3d 298, 302 (2d Cir. 2010) (internal quotation marks omitted).  And in the Title VII

context, "Plaintiffs' purported fear of retaliation . . . is not a ground for equitable tolling.

Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time

requirement because an employee could defer filing indefinitely so long as she had an

apprehension about possible retaliation." *Carter v. West Publ'g Co.*, 225 F.3d 1258,

1268 (11th Cir. 2000) (internal citations omitted, collecting cases); *see also Pratt v. Stop*

---

[4] Indeed, Flores did file her EEOC complaint in August 2008, yet continues to be employed by HRA to date.

*& Shop Supermarket Co., LLC*, No. 09-CV-5417, 2011 WL 579152, at *4 (E.D.N.Y. Feb. 9, 2011) ("[Plaintiff] claim[s] that he feared retaliation for bringing a suit in district court because he continued to work for the defendant at that time.  However, plaintiff alleges no facts that would support this rationale.  Nor does plaintiff provide any legal support for his argument that fear of retaliation is a proper basis for tolling the statutory filing period and the Court is aware of none. . . . Instead, courts have determined that fear of retaliation is not a proper basis for equitable tolling." (collecting cases)).

### D.  Conclusion on Timeliness

Flores is barred from asserting discrimination claims based on discrete acts occurring before October 10, 2007.  Accordingly, to the extent she asserts disparate treatment claims, those claims based on (1) Maloney's statement that Flores would not be promoted due to her accent; (2) the four occasions in 2006 in which Maloney denied Flores leave; (3) Maloney's denial of Flores's promotion in April 2006; and (4) the "unjust disciplinary memo[randa]" from January and February 2007; are dismissed.  In addition, any undated and unspecified incidents of disparate treatment—including ostracism, undue work-related restrictions, harsh language, application of time and leave rules, work assignments, meeting attendance, training, and other disciplinary memoranda—are barred as untimely to the extent they occurred prior to October 10, 2007.

Flores's hostile work environment, retaliation, and disparate treatment claims accruing after October 10, 2007, survive.  This last category of claims includes claims based on (1) the disciplinary memoranda from 2008; (2) the negative evaluations from

January 2008, January 2009, and February 2010; (3) the July 2008 removal from

translation work; (4) the August 2008 accusations regarding falsification of time records;

(5) the April 2009 unjust reprimand; and (6) other undated incidents of disparate

treatment falling into the categories listed in the previous paragraph to the extent they

occurred between October 10, 2007, and March 17, 2010, the date of the filing of this

lawsuit.[5]

## II. Rule 12(b)(6) Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough

facts to state a claim to relief that is plausible on its face."  *Starr v. Sony BMG Music

Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009).  If the factual averments permit no reasonable inference stronger than the "mere

possibility of misconduct," the complaint should be dismissed.  *Starr*, 592 F.3d at 321

(quoting *Iqbal*, 129 S. Ct. at 1950).  Thus, "[w]here a complaint pleads facts that are

---

[5] Administrative exhaustion of claims by charging before the EEOC is ordinarily required before asserting discrimination claims in federal court. *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).  However, if a claim accrues after the filing of an EEOC charge, but is "reasonably related" to allegations contained therein, a plaintiff may maintain that claim. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001).  Claims are reasonably related when (A) "the conduct complained of would fall within the scope of the EEOC investigation"; (B) they "alleg[e] retaliation by an employer against an employee for filing an EEOC charge"; or (C) they "allege[] further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 496-97 (S.D.N.Y. 2011).  Flores's EEOC complaint contains the same factual allegations concerning pre-August 2008 conduct as her complaint before the Court; and her remaining allegations are merely more of the same.  (*See generally* Miller Reply Decl. Ex. A ("EEOC Compl.").)  Thus under the third exception just stated, Flores's post-August 5, 2008 claims are properly before the Court.  In any event, HRA makes no argument that the Court should not consider those claims, and indeed includes those post-August 5, 2008 claims in its list of timely claims.  (*See* Def.'s Mem. at 5.)

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). In applying this standard of facial plausibility, the Court takes all "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). But the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949.

Because "[p]ro se plaintiffs might not have the legal ken of attorneys," *Springs*, 2010 WL 4068712, at *2, they are held to less stringent pleading standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The court must construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Fehrlin v. Liebowitz*, No. 10 Civ. 5027, 2010 WL 4844395, at *1 (S.D.N.Y. Nov. 29, 2010).

## III.  Disparate Treatment

A plaintiff bringing an employment discrimination claim based on disparate treatment must eventually establish, *inter alia*, a prima facie case of discrimination by proving that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). But plaintiffs' burden at the pleading stage is lower. "[C]omplaints in [employment discrimination] cases . . . must satisfy only the simple requirements of [Federal Rule of Civil Procedure] 8(a)." *Swierkiewicz v.*

14

*Sorema N.A.*, 534 U.S. 506, 513 (2002).  Thus Flores's "complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief.  Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id*. at 512; *see also Fowler v. Scores Holding, Co., Inc.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009) ("Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination.  Rather, an employment discrimination complaint must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (alterations and internal quotation marks omitted) (citing *Swierkiewicz*, 534 U.S. at 512, 514)); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (Lynch, J., sitting by designation) ("To survive a motion to dismiss, a plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a *prima facie* case."); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472, 2010 WL 1222044, at *3 (S.D.N.Y. Mar. 29, 2010) ("The pleading requirements in discrimination cases are very lenient, even *de minimis*." (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).

"The *Swierkiewicz* holding applies with equal force to any claim that the *McDonnell Douglas* framework covers, including claims of retaliation, disparate treatment, and hostile work environment, and retains its vitality in the wake of *Twombly* and *Iqbal*."  *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 497 (S.D.N.Y. 2011) (alterations and internal quotation marks omitted) (citing *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008)); *see also* David L. Noll, *The Indeterminacy of* Iqbal, 99 Geo. L.J. 117, 144-45 (2010) (noting that "some courts and commentators

have questioned whether *Swierkiewicz* remains good law after *Iqbal*" but that "[t]he better view is that *Iqbal* left the essential holding of *Swierkiewicz*—that the complaint in that case was sufficient—intact"). This is so because "the *McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s simplified notice pleading standard would unjustifiedly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (alterations and internal quotation marks omitted). Though not required to plead the elements of a prima facie case, the complaint must still "nudge[] [plaintiff's] claims across the line from conceivable to plausible" to survive motion to dismiss. *Guzman*, 2010 WL 1222044, at *3.

In arguing for dismissal, HRA contends only (1) that the timely acts Flores complains of do not constitute adverse employment actions; and (2) that even if they did, Flores's own concession that Maloney's actions were motivated by her desire "to punish [Flores] for having complained about her," (Pl.'s Opp'n at 7), belies any inference of discrimination the allegations might raise. These arguments, however, mistake Flores's burden at this stage in the litigation. *See Peterson v. Long Island R.R. Co.*, No. 10-CV-480, 2010 WL 2671717, at *4 (E.D.N.Y. June 30, 2010) (plaintiff "is not required to plead each element of disparate treatment, but rather must plead a facially plausible claim with sufficient facts to give the defendant fair notice of what the claim is and the grounds upon which it rests." (alterations and internal quotation marks omitted)); *Kear v. Katonah Lewisboro Central Sch. Dist.*, No. 05 Civ. 7037, 2007 WL 431883, at *2 (S.D.N.Y. Feb. 7, 2007) ("whether certain employment actions "qualify as 'adverse' for the purposes of Title VII, is a fact-specific inquiry . . . to be resolved at a later stage of litigation.");

*Morales v. Long Island R.R. Co.*, No. 09 Civ. 8714, 2010 WL 1948606, at *3 (S.D.N.Y.
May 14, 2010) ("A complaint that contains specific factual allegations as to events
leading up to an adverse action, accompanied by conclusory allegations of discriminatory
intent, suffices to state a discrimination claim.").

Here, the timely allegations in the complaint are sufficient to overcome the
motion to dismiss on Flores's disparate treatment claims. Flores alleges, specifically, that
she has received unwarranted disciplinary memoranda, reprimands, and negative
evaluations; that she was falsely accused of forging time records; and that she was
prohibited from performing translation work. She also asserts that African American
coworkers previously of equal rank but with less knowledge and experience have been
promoted before her, and that other employees with "extensive disciplinary records"
received less negative performance evaluations. (*See* Pl.'s Opp'n at 8.) In addition,
Flores alleges Maloney acted towards her and other Hispanics in a disparaging and
discriminatory menner, not used with non-Hispanics. (*See* Compl. Addendum at 3.)
Regarding training, Flores asserts that by being prohibited from training and/or attending
meetings, she lost opportunities for promotion and career advancement. (*See id*. at 2;
Pl.'s Opp'n at 10-11.) And regarding unwarranted disciplinary memoranda and
evaluations, Flores alleges that her file contains these documents which likewise inhibit
her chances of promotion. (*See* Compl. Addendum at 2.)

Taken as a whole, and drawing all inferences in Flores's favor as the Court must
on this motion, Flores has sufficiently alleged disparate treatment claims.[6] She asserts

---

[6] That Flores may also allege that there is personal animosity between her and Maloney does not
necessarily exclude a prohibited racial motivation. *See Brown v. City of New York*, No. 10 Civ. 6491, 2011
WL 2693677, at *8 (S.D.N.Y. July 11, 2011) (disparate treatment claims survive motion to dismiss when
the "[c]omplaint's allegations of motivation for the actions are not clear, insofar as it asserts specifically

that she has been the subject of conduct that has allegedly affected the progression of her career, and that that conduct was not applied to non-Hispanic employees more warranting of it.  This is enough to survive a motion to dismiss; arguments concerning materiality, adverseness, discriminatory inference, etc, are better suited for summary judgment motions following a more developed record.[7]  *See Morales*, 2010 WL 1948606, at *3-4 ("Although he does not allege specifically what sort of promotion [he lost], this Court cannot determine on a motion to dismiss that Morales did not experience a setback to [his] career.  Indeed, with this kind of a write-up in his personnel file, promotions are likely to be few and far between.  Finally, Morales alleges that LIRR employees of other races have been caught actually sleeping and not received any sort of punishment.  Again, on a motion to dismiss, these allegations satisfy the fourth prong of the prima facie case, *i.e.,* that the action taken against him may be construed as having occurred under circumstances giving rise to an inference of discrimination." (internal quotation marks and citations omitted)); *Peterson*, 2010 WL 2671717, at *4 (claim survives when African American plaintiff plead he received punishment greater than that of Caucasian coworkers, that supervisor referred to African Americans as "you people," and that plaintiff understood that phrase to be derogatory about African Americans).

    The cases cited by HRA do not compel a different result.  For the most part, these cases consider the sufficiency of evidence on motions for summary judgment, not the sufficiency of pleadings on motions to dismiss, and consider adverse employment actions

---

that Wolfe's display of hostility toward Walters was triggered by the revelation of her friendship with someone who was Wolfe's enemy but also alleges that Wolfe's actions were the product of animus against non-Jamaicans.").

[7] HRA concedes that Flores was a member of a protected class and was qualified for her position.  (Def.'s Mem. at 7.)

in the context of retaliation claims, not in the context of disparate treatment claims.  *See,*
*e.g.*, *Nieves v. Dist. Council 37 (DC37), AFSCME, AFL-CIO*, No. 04 Civ. 8181, 2009
WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009) (on summary judgment, analyzing adverse
employment actions in the context of a retaliation claim); *Smalls v. Allstate Ins. Co.*, 396
F. Supp. 2d 364, 370 (S.D.N.Y. 2005) (same); *Nicastro v. Runyon*, 60 F. Supp. 2d 181,
186 (S.D.N.Y. 1999) (same).  Other cases cited by HRA are factually off-point, *see, e.g.*,
*Hall v. New York City Dep't of Transp.*, 701 F. Supp. 2d 318, 335-36 (E.D.N.Y. 2010)
(on summary judgment, concluding that reprimands were not actionable because plaintiff
continued to receive positive performance evaluations); *Spruill v. New York City Health*
*& Hosps. Corp.*, No. 06 Civ. 11362, 2008 WL 3911015, at *2 (S.D.N.Y. Aug. 25, 2008)
(on summary judgment, holding that mere criticism of an employee, alone, is not
actionable); or simply lay out the standard for determining whether an act is an "adverse
employment action" on summary judgment.

     Accordingly, to the extent timely, Flores's disparate treatment claims survive
HRA's motion to dismiss.

## IV.  Hostile Work Environment

     HRA argues that Flores's hostile work environment claim must fail because (1)
the complaint does not indicate that any offensive conduct on Maloney's part was
attributable to Flores's race or national origin; and (2) that the conduct alleged was not
pervasive or severe, a required element of a hostile work environment claim.[8]  HRA's

---

[8] Those being "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently
severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for
imputing the conduct that created the hostile environment to the employer."  *Guzman*, 2010 WL 1222044,
at *3 (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004)).

first argument "need not detain the Court for long, as the [complaint] plainly shows otherwise." *Langford*, 765 F. Supp. 2d at 503. The complaint alleges that Maloney ostracized Flores because of her race, that Maloney enforced workplace rules differently against Hispanics and African Americans, that Maloney belittled Flores's accent,[9] and that Maloney communicated with Hispanic employees in abusive manners. These allegations are sufficient to support an inference that Maloney's conduct was motivated, in part, by discriminatory animus.

HRA's second argument fails for similar reasons to its argument for dismissing Flores's disparate treatment claims. At the pleading stage, a complaint asserting a hostile work environment claim survives so long as it "gives fair notice of what the plaintiff's claim is and the grounds upon which it rests. Thus, at this stage, the proper inquiry is not whether the plaintiff has adduced sufficient evidence to prevail ultimately at trial, but rather whether she is entitled to offer evidence to support her claims." *Drees v. County of Suffolk*, No 06-CV-3298, 2007 WL 1875623, at *11 (E.D.N.Y. June 27, 2007) (internal citations and quotation marks omitted). Flores's complaint makes the specific allegations listed just above, and presents an overarching picture of hostility allegedly towards Flores and other Hispanics working under Maloney. Whether the environment was, in fact, sufficiently severe or pervasive, and whether Maloney was motivated by Flores's race or by Flores's comments to Morcos, are questions better left for summary judgment.

Accordingly, Flores's hostile work environment claim survives.

---

[9] Flores's opposition papers assert, in addition, that Maloney also rejected an Indian American job applicant due to his accent. (Pl.'s Opp'n at 9.)

20

**V.  Title VII Retaliation**

Concerning Flores's retaliation claim, HRA again argues that Flores has failed to establish a prima facie case of retaliation[10] because (1) Flores mostly alleges conduct too distant in time from any protected activity; and (2) to the extent alleged conduct was temporally proximate to protected activity, that conduct was could not constitute adverse employment actions.

HRA's arguments fail.  "Participation in protected activity includes expressing opposition to employment practices unlawful under Title VII . . . .  [A] plaintiff alleging retaliation need only have a reasonable, good faith belief that the employment practice complained of is unlawful."  *Swift v. Countrywide Home Loans, Inc.*, 770 F. Supp. 2d 483, 489 (E.D.N.Y. 2011) (internal citations and quotation marks omitted).  Thus HRA concedes that Flores's filings of her April 5, 2007 internal complaint and her August 5, 2008 EEOC complaint constitute protected activity for purposes of Title VII retaliation. (*See* Def.'s Mem. at 11.)[11]  HRA also concedes that at least some of the specific instances of conduct alleged were sufficiently temporally proximate to that protected activity.  (*See id*. at 12 ("Therefore, the only remaining claims of retaliation which may be sufficiently close in proximity . . . .").)

---

[10] An employment discrimination plaintiff establishes a prima facie case of retaliation by proving "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 173 (2d Cir. 2005).

[11] HRA argues that the proper retaliation analysis date of Flores's EEOC filing is August 25, 2008—the date the EEOC received Flores's complaint—not August 5, 2008—the date Flores alleges she filed the complaint.  (*See* Def.'s Reply Mem. at 8.)  HRA apparently is arguing that any acts Maloney took between August 5 and August 25, 2008, cannot form the basis of a retaliation claim because, HRA could not have known about the EEOC complaint until the EEOC stamped it with a received mark.  (*See id*; *see also* Miller Reply Decl. Ex. A at 1.)  HRA cites no law for this proposition, and indeed the proposition that neither Maloney nor anyone else at HRA *could have known* about the EEOC complaint until the EEOC had received it does not withstand scrutiny.

HRA argues only that that conduct did not constitute adverse employment activities.  This argument has already been addressed; whether conduct constituted an adverse employment action is a question better left for summary judgment.  *See Kear*, 2007 WL 431883, at *2.  What is more, among the conduct concededly within a sufficient time period is Maloney's August 13, 2008 accusation that Flores falsified time records—an accusation, according to Flores, that could easily cause HRA to fire her. (*See* Pl.'s Opp'n at 6.)  An adverse employment action for purposes of a retaliation claim is an act that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Ballard v. The Children's Aid Soc.*, ___ F. Supp. 2d ___, 2011 WL 1664980, at *5 (S.D.N.Y. Apr. 28, 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Accepting as true that HRA would have had cause to fire Flores on Maloney's accusation that Flores falsified time records, that Maloney made that accusation is an adverse employment action since it would clearly dissuade a reasonable worker from filing a discrimination charge.  Because Flores's retaliation claim would survive regardless, it is unnecessary to consider, on this motion, whether certain instances of conduct complained of did not follow Flores's complaints quickly enough.

Accordingly, Flores's Title VII retaliation claim survives.

## VI. First Amendment Retaliation

Finally, the Court notes that though at first blush Flores's complaint appears to present a claim for First Amendment retaliation—and that the Court reads the *pro se* complaint to allege all causes of action is can—that claim would not survive a motion for summary judgment.

The Second Circuit "ha[s] described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011). For a public employee, such as Flores, to allege First Amendment retaliation, "he or she must initially demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted). "Speech by a public employee is on a matter of public concern if it relates to any matter of political, social, or other concern to the community. If the speech, however, is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, has greater latitude to discipline the employee." *Id.* (internal quotation marks and citations omitted). Complaints or reports of coworkers' or supervisors' misconduct, however, are made "pursuant to [] official duties," and therefore is speech made as an employee and not as a citizen. *Knight v. Drye*, No. 07-3097, 2009 WL 704140, at *6 (E.D. Pa. Mar. 13, 2009), *aff'd* 375 F. App'x 280 (3d Cir. 2010); *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements pursuant to their official

23

duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

Here, Flores complained to Morcos of Maloney's disclosure of confidential information. Morcos then informed Maloney of that complaint. Maloney, in turn, took revenge on Flores for tattling on her. Because Flores was complaining of an employment issue, up the chain of command to other employment personnel, Flores's complaint is not protected speech for purposes of First Amendment retaliation.

## CONCLUSION

For the reasons stated above, HRA's Motion to Dismiss [13] is GRANTED IN PART and is DENIED IN PART. To the extent Flores asserts disparate treatment claims based on discrete acts occurring prior to October 10, 2007, those claims are dismissed. Flores's remaining disparate treatment claims survive, as do her hostile work environment and retaliation claims.

SO ORDERED.

Dated: New York, New York
August 11, 2011

_____
Richard J. Holwell
United States District Judge

24